```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

```
JULIE A. YARGEAU,

                                Plaintiff,        1:16-cv-00706-MAT

                                                  DECISION AND
                                                  ORDER
              -vs-

NANCY A. BERRYHILL, Acting Commissioner
of Social Security,

                                Defendant.
```

## I. INTRODUCTION

Represented by counsel, Julie A. Yargeau ("Plaintiff") has brought this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security[1] ("Defendant" or "the Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 23, 2017. The Clerk of the Court is instructed to amend the caption of this case pursuant to Federal Rule of Civil Procedure 25(d) to reflect the substitution of Acting Commissioner Berryhill as the defendant in this matter.

**II. PROCEDURAL BACKGROUND**

On November 27, 2012, Plaintiff protectively filed applications for DIB and SSI, alleging disability beginning January 31, 2009. Administrative Transcript ("T.") 92-93, 148-160. Plaintiff's applications were initially denied and she timely requested a hearing, which was held before administrative law judge ("ALJ") David S. Lewandowski on March 3, 2014. T. 40-71, 108-109. In her prehearing brief and at the hearing, Plaintiff amended her alleged onset date to August 1, 2010. T. 44, 232. On May 8, 2015, the ALJ issued an unfavorable decision. T. 20-39. Plaintiff's request for review was denied by the Appeals Council on August 22, 2016, making the ALJ's decision the final decision of the Commissioner. T. 1-7. Plaintiff then timely commenced this action.

**III. THE ALJ'S DECISION**

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a). Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2014. T. 25.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from August 1, 2010, the amended alleged onset date. *Id*. At step two, the ALJ determined that Plaintiff had the severe impairments of Crohn's disease and irritable bowel syndrome ("IBS"). T. 26. At step three, the ALJ considered Plaintiff's impairments and found that, singly or in

combination, they did not meet or medically equal the severity of a listed impairment. *Id.* In particular, the ALJ considered Listing 5.06 (inflammatory bowel disease) in reaching this determination. *Id.*

Prior to proceeding to step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following nonexertional limitations: will require three unscheduled bathroom breaks for up to 10 minutes in duration and will need to immediately leave the workstation; requires a work schedule that will start after 12:00 noon. *Id.*

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. T. 32. At step five, the ALJ relied on a vocational expert's testimony to find that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, including hospital cleaner, laundry laborer, document preparer, and commercial cleaner. T. 32-33. The ALJ accordingly found that Plaintiff was not disabled as defined in the Act. T. 34.

## IV. DISCUSSION

### A. Scope of Review

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, a district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record.

-3-

*See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). Although the reviewing court must scrutinize the whole record and examine evidence that supports or detracts from both sides, *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted), "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

In this case, Plaintiff contends that remand is necessary because (1) the Appeals Council failed to address and weigh the opinion of treating physician Dr. Molly Zittel, (2) the ALJ improperly relied on his own lay judgment over the medical opinions of record, (3) the ALJ included an improper limitation in his RFC finding, (4) the ALJ's step five finding is not based on substantial evidence, and (5) the ALJ erred in concluding that Plaintiff's anxiety was not a severe impairment. For the reasons discussed below, the Court finds these arguments without merit.

**B. The Appeals Council Properly Assessed Dr. Zittel's Opinion**

On April 25, 2016 (nearly a year after the ALJ issued his decision), Dr. Zittel, Plaintiff's internist, completed a form entitled "Medical Examination for ABAWD Determination" related to Plaintiff. Docket No. 8-2 at 12-13. Dr. Zittel stated that

Plaintiff had Crohn's disease and IBS and that she was moderately limited in her ability to lift, carry, push, pull, bend, use her hands, and use stairs or do other climbing. *Id*. at 13. Dr. Zittel further opined that Plaintiff was very limited in her ability to function in a work setting at a consistent pace. *Id.*

On August 8, 2016, Plaintiff's counsel submitted Dr. Zittel's April 2016 opinion (along with other medical records from after the date of the ALJ's decision) to the Appeals Council. *Id*. at 3. In its denial of Plaintiff's request for review, the Appeals Council noted that it had received this information, but explained that "[t]he Administrative Law Judge decided your case through May 8, 2015. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before May 8, 2015." T. 2. Plaintiff contends that the Appeals Council's conclusion that Dr. Zittel's opinion was unrelated to the relevant time period was erroneous. Plaintiff further argues that the Appeals Council was required to review Dr. Zittel's opinion and to assign a weight to it. Plaintiff is incorrect.

The Commissioner's regulations "require the Appeals Council to consider new and material evidence if it relates to the period on or before the date of the [ALJ's] hearing decision." *Miller v. Colvin*, No. 13-CV-6462P, 2015 WL 1431699, at *13 (W.D.N.Y. Mar. 27, 2015) (internal quotation omitted). Where a claimant submits "additional evidence that does not relate to the period on or

before the date of the administrative law judge hearing decision," the Appeals Council will "send [the claimant] a notice that explains why it did not accept the additional evidence." 20 C.F.R. § 404.970(c).

In this case, Dr. Zittel's opinion was rendered almost a year after the ALJ had issued his decision, and nothing in the opinion indicates that it is meant to be retrospective. Under these circumstances, it was not error for the Appeals Council to decline to consider this evidence. *See, e.g., Miller*, 2015 WL 1431699, at *14 (Appeals Council did not err in declining to consider opinion rendered six months after the ALJ's decision where nothing therein suggested it was meant to be retrospective); *Lovell v. Astrue*, No. 2:12-CV-128, 2013 WL 174886, at *4 (D. Vt. Jan. 16, 2013) (Appeals Council did not err in declining to consider a disability determination explanation that was issued three months after the ALJ's decision and that contained "no indication . . . that the statements . . . were meant to be retrospective"); *Florek v. Comm'r of Soc. Sec.*, No. 1:08-CV-0919, 2009 WL 3486643, at *12 (N.D.N.Y. Oct. 21, 2009) (Appeals Council properly did not consider assessment that "post-date[d] the ALJ's decision by nearly eleven months and [did] not relate to the period on or before the date of the ALJ's decision.").

Plaintiff notes that Dr. Zittel checked a box on the form indicating that Plaintiff had a "severe impairment(s) which has lasted, or is expected to last at least 12 months" (Dkt. 8-2 at

12), and argues that this statement means the limitations identified in Dr. Zittel's opinion had begun at least as of April 2015. This is a strained reading of the form unsupported by its actual language. There is no question that Plaintiff's severe impairments of Crohn's disease and IBS pre-dated the ALJ's decision, which is all this statement can reasonably be read to indicate. It does not in any way suggest that the limitations identified by Dr. Zittel are anything other than an assessment of Plaintiff's functioning as of the date the opinion was rendered.

Because Dr. Zittel's opinion was not related to Plaintiff's condition during the relevant time period, the Appeals Council did not err in declining to consider it. Accordingly, the Court does not find that remand is warranted on this basis.

**C. The ALJ did not Impermissibly Rely on his Lay Opinion to Find that Plaintiff Required Three Unscheduled Bathroom Breaks**

Plaintiff next argues that the ALJ arbitrarily substituted his own lay opinion for the medical opinions of record, because he determined that Plaintiff would require three unscheduled bathroom breaks, but no medical source identified that specific limitation. The Court finds this argument without merit.

An ALJ assessing a disability claim is required to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). The ALJ's RFC finding need not "not perfectly correspond with any of the opinions of medical sources."

*Id.*; *see also Rosa v. Callahan*, 168 F.3d 72, 29 (2d Cir. 1999) ("the ALJ's RFC finding need not track any one medical opinion"); *Breinin v. Colvin*, No. 514CV01166LEKTWD, 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion."). Where an ALJ makes an RFC assessment that is *more* restrictive than the medical opinions of record, it is generally not a basis for remand. *See Castle v. Colvin*, No. 1:15-CV-00113(MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) ("the fact that the ALJ's RFC assessment did not perfectly match Dr. Balderman's opinion, and was in fact more restrictive than that opinion, is not grounds for remand"); *Savage v. Comm'r of Soc. Sec.*, No. 2:13-CV-85, 2014 WL 690250, at *7 (D. Vt. Feb. 24, 2014) (finding no harm to claimant where ALJ adopted an RFC determination that was more restrictive than medical source's opinion).

In this case, the medical evidence of record supported a less restrictive RFC finding than the one ultimate reached by the ALJ. Consultative physician Dr. Hongbiao Liu examined Plaintiff on February 20, 2013, and opined that she had no limitations for routine activities. T. 330. Similarly, Plaintiff's treating gastroenterologist Dr. Kunwardeep Sohal authored a letter dated July 28, 2014 in which he stated that Plaintiff's Crohn's disease was "well controlled and had been so for several years." T. 517.

Dr. Sohal further explained that Plaintiff had underlying irritable bowel symptoms that his practice was "currently managing." *Id*. Dr. Sohal stated that in his experience "patients who are medication compliant and who's Crohn's disease is well managed are able to work regularly.' *Id*. On August 8, 2014, Dr. Sohal authored another letter in which he noted that Plaintiff's most recent colonoscopy had demonstrated no active inflammation and stated that she was "in remission from a standpoint of her Crohn's." T. 549. Dr. Sohal further noted that his practice was "attempting to manage" Plaintiff's functional symptoms. *Id*. The opinions of both the consultative examiner and Plaintiff's treating physician therefore support the conclusion that she was able to work without any identified limitations.

At the hearing, however, Plaintiff testified that she had to frequently stop her daily activities to use the bathroom, up to 15 times in an average day. *See* T. 61. She further testified that the majority of her bathroom use occurred in the morning. T. 51-52, 59-61. Plaintiff's medical records confirm that her need to use the bathroom was largely limited to the morning hours. For example, in February 2014, Plaintiff reported to Dr. Sohal that she had "significant urgency" and "irregular" bowel movements in the morning, but that afterwards, she would have "1-2 additional bowel movements for the rest of [the] day." T. 362. In May 2014, Dr. Sohal observed that Plaintiff's bowel movements were "regular for her, which is 4-5 formed bowel movements between the

hours of 10AM and 12 PM" and that Plaintiff "denie[d] any diarrhea." T. 358.

The ALJ therefore reasonably synthesized all the evidence of record (including Plaintiff's testimony and statements to her physicians) into a finding that she (1) could not work at all during the morning hours and (2) would need up to three unscheduled bathroom breaks during her afternoon working hours. This RFC finding, while more restrictive than the medical opinions of record, is supported by Plaintiff's testimony and her statements to her physicians regarding her bathroom use. In essence, Plaintiff faults the ALJ for having accepted, at least in part, her testimony regarding her frequent need to use the bathroom, because no medical source opined that she required unscheduled bathroom breaks. The Court does not find that this constitutes reversible error. A claimant's testimony is acceptable evidence to support the inclusion of a limitation in an RFC determination. *See Crosby v. Berryhill,* 2017 WL 3065271, at *3 (W.D.N.Y. July 18, 2017); *Hammond v. Colvin*, 2013 WL 4542701, at *6 (N.D.N.Y. Aug. 26, 2013). As such, remand is not warranted on this basis.

**D.  The ALJ's Finding that Plaintiff Could not Work During the Morning Hours was not Impermissible**

Plaintiff's next argument is that the ALJ included an improper limitation in his RFC determination. Specifically, Plaintiff contends that it was impermissible for the ALJ to conclude that she was incapable of working prior to 12:00 p.m. because this is "not

a limitation in [Plaintiff's] capacity to do work-related physical and mental activities." Docket No. 8-1 at 21. This argument lacks merit.

An RFC determination "must reflect [a claimant's] ability to perform work on a 'regular and continuing basis.'" *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (quoting 20 C.F.R. § 416.945(b) and (c); *see also* Social Security Ruling ("SSR") 96-8p ("RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p.

Contrary to Plaintiff's argument, nothing in either the Commissioner's regulations or SSR 96-8p suggests that an RFC finding must correlate to a traditional 9:00 a.m. to 5:00 p.m. work schedule. To the contrary, the language of SSR 96-8p (particularly the phrase "or an equivalent work schedule") makes it clear that an RFC finding may consider a claimant's capability to work on a non-traditional schedule. In this case, as discussed above, the evidence of record showed that Plaintiff's symptoms were concentrated during the morning hours. Plaintiff has not offered any compelling argument that it was impermissible for the ALJ to account for those severe, time-limited symptoms by concluding that Plaintiff was unable to work during the morning hours. The Court

therefore rejects Plaintiff's argument that the inclusion of this limitation in the RFC was improper.

   **E.   The Vocational Expert's Testimony Constituted Substantial Evidence**

At step five of his analysis, the ALJ relied on the testimony of a vocational expert ("VE") to find that there were a signficiant number of jobs in the national economy that Plaintiff was capable of performing. Plaintiff takes issue with the VE's testimony, arguing that it was "conjured out of whole cloth" (Docket No. 8-1 at 23) and therefore did not constitute substantial evidence in support of the ALJ's conclusion. In support of this argument, Plaintiff identifies what she contends are inconsistencies in the VE's testimony regarding a typical employer's tolerance for unscheduled bathroom breaks.

The testimony of a VE in the social security context need not meet the standards of scientific rigor required of experts by the Federal Rules of Evidence. Instead, "[c]ourts generally accept as substantial evidence imprecise vocational expert opinions formed consistent with the methodology utilized by their professional contemporaries and based upon sources, materials and data generally deemed reliable. 'Experience' may provide the necessary foundation for vocational experts' testimony, especially when the record reflects that they personally performed actual market surveys or placed substantial numbers of clients within the jobs they identified as matching claimant'' residual functional capacities."

*Vandermark v. Colvin*, No. 3:13-CV-1467 GLS/ESH, 2015 WL 1097391, at *16 (N.D.N.Y. Mar. 11, 2015).

In this case, Plaintiff has not identified any alleged errors in the VE's methodology, nor has she taken issue with the VE's qualifications. Instead, her entire argument hinges on the alleged inconsistencies in the VE's testimony. However, to the extent Plaintiff contends that the VE's testimony at the hearing was internally inconsistent, this argument is irrelevant, because the ALJ did not rely on the VE's hearing testimony. To the contrary, after the hearing concluded, the ALJ submitted written interrogatories to the VE, and based his step five finding on the VE's written response. The VE's response to the ALJ's interrogatories is internally consistent, and clearly identifies, based on the VE's experience and knowledge, several jobs in the national economy that an individual with Plaintiff's RFC is capable of performing. Plaintiff has failed to demonstrate that the VE's interrogatory responses were unreliable or "conjured out of whole cloth," and the Court therefore rejects her argument that these written responses did not constitute substantial evidence for the ALJ's step five finding.

**F. The ALJ did not Err at Step Two**

Plaintiff next argues that the ALJ erred by failing to find, at step two of his analysis, that Plaintiff suffered from the severe impairment of anxiety. There is no support in the record for this contention.

At step two, an ALJ must consider whether a claimant's medically determinable are severe or non-severe. A "severe" impairment is "one that significantly limits a claimants ability to perform basic work activities," such as "walking, standing, sitting, lifting, [etc.], [c]apacities for seeing, hearing, and speaking, and [u]nderstanding, carrying out, and remembering simple instructions." *Faison v. Berryhill*, 2017 WL 3381055, at *2 (W.D.N.Y. Aug. 5, 2017) (internal quotations and citations omitted). "[T]he mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe. Indeed, a finding of not severe should be made if the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (internal quotations and citations omitted).

In this case, the record does not support the conclusion that Plaintiff had a severe impairment of anxiety. The record does not contain any evidence that Plaintiff ever sought treatment from a mental health provider for her alleged anxiety. Moreover, consultative examiner Dr. Susan Santarpia performed a psychiatric evaluation of Plaintiff on February 20, 2013, and did not assess any psychiatric diagnoses. T. 333-35. Similarly, state agency reviewing psychiatrist Dr. J. Echevarria opined that Plaintiff had no severe mental impairments. T. 87. As such, the ALJ did not

err at step two in finding that Plaintiff's alleged anxiety was not a severe impairment.

Plaintiff alleges that two of her physicians diagnosed her with an unspecified severe "mental impairment" (Docket No. 8-1 at 25), but this is a misstatement of the medical record. Although the record does show that Dr. Zittel prescribed Plaintiff with Xanax, Dr. Zittel never opined that Plaintiff suffered from a severe mental impairment. To the contrary, when asked to list all of Plaintiff's medical conditions "includ[ing] psychiatric and alcohol/drug addiction diagnosis," Dr. Zittel listed only Crohn's disease and IBS. Docket No. 8-2 at 12. Moreover, Dr. Zittel's treatment notes do not include anxiety in Plaintiff's list of "medical problems." *See, e.g.,* T. 487, 507, 511. Additionally, Dr. Zittel's notes from her first visit with Plaintiff indicate that Plaintiff was "maintained on alprazolam [the generic name for Xanax]." T. 511. In other words, Dr. Zittel's records strongly suggest that she was not the physician who initially prescribed Plaintiff with Xanax.

Plaintiff's claim that Dr. Sohal assessed her with a mental impairment is even more strained. Dr. Sohal, who is a gastroenterologist and not a mental health provider, indicated that he believed that some of Plaintiff's symptoms were "functional," which Plaintiff contends constitutes an opinion that Plaintiff had a mental impairment. Plaintiff has offered no support for her position that the presence of functional symptoms associated with

her Crohn's disease establishes the existence of a severe mental health impairment. Plaintiff's argument also ignores the distinction between experiencing the emotion anxiety and suffering from the psychiatric condition of anxiety. Evidence that Plaintiff sometimes felt anxious about the potential for a sudden need to use the bathroom simply does not establish that she suffered from a severe mental impairment.

Plaintiff makes a conclusory assertion that Dr. Santarpia's opinion was stale. However, Plaintiff has not identified any evidence to support the conclusion that her mental condition had significantly changed between Dr. Santarpia's examination and the ALJ's decision. As such, the Court does not find that the ALJ erred in relying on Dr. Santarpia's opinion.

In short, nothing in the record supports the conclusion that Plaintiff suffered from the medically determinable, severe impairment of anxiety. The Court therefore finds no error at step two.

**G.   The ALJ Appropriately Assessed Plaintiff's Credibility**

Plaintiff's final argument is that the ALJ failed to properly assess her credibility. This argument also lacks merit.

"Because the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, his decision to discredit subjective testimony is entitled to deference and may not be disturbed on review if his disability determination is supported by substantial evidence." *Hargrave v. Colvin*, 2014 WL

3572427, at *5 (W.D.N.Y. July 21, 2014) (internal quotation omitted). While the Commissioner's regulations set forth seven factors the ALJ is to consider in assessing credibility, the ALJ is not required to explicitly discuss each of the factors, so long as he sets forth the reasoning for his credibility determination and that determination is adequately supported by the evidence. "[T]he predominant focus of a credibility analysis must be the entire case record as a whole, and . . . the adjudicator [need only] show specific cause, grounded in evidence, for his or her conclusion." *Snyder v. Barnhart*, 323 F. Supp. 2d 542, 547 (S.D.N.Y. 2004).

In this case, the ALJ found that Plaintiff was not fully credible because (1) her reported activities of daily living were inconsistent with the severe limitations she claimed, (2) Plaintiff's medical treatment had been successful and was not of the type that would be expected of a totally disabled individual, (3) Plaintiff's physicians did not opine that she had any restrictions and, to the contrary, Dr. Sohal suggested that she would be able to work regularly, and (4) Plaintiff's claim that her symptoms were constant was inconsistent with her reports to her physicians, which showed that her symptoms waxed and waned. T. 31-32. For the reasons discussed below, the Court finds that the ALJ adequately and appropriately explained his reasons for finding Plaintiff less than fully credible.

First, it is well-established that a claimant's daily activities are an appropriate factor to consider in assessing

credibility. *See, e.g., Crowley v. Barnhart*, 220 F. Supp. 2d 176, 180 (W.D.N.Y. 2002). In this case, the ALJ appropriately found that Plaintiff's claim that she was totally disabled was somewhat inconsistent with her reported activities of daily living, which including driving, shopping, cooking, cleaning, and caring for all of her personal needs.

The ALJ also appropriately noted that Plaintiff's claims were inconsistent with her medical treatment records, which showed that her symptoms were well-controlled. In assessing a claimant's credibility, an ALJ is instructed to consider whether his subjective claims of pain are "consistent with the medical and other objective evidence," *Wells v. Colvin*, 87 F. Supp. 3d 421, 431 (W.D.N.Y. 2015), which is what the ALJ did in this case.

Finally, the ALJ was permitted to consider discrepancies between Plaintiff's statements to her treatment providers and her hearing testimony in determining that she was less than fully credible. *See Dennis v. Berryhill*, No. 6:16-CV-6750-MAT, 2018 WL 488942, at *7 (W.D.N.Y. Jan. 19, 2018) (ALJ properly considered "discrepancies between [a claimant's] hearing testimony and his reports to his providers" in assessing credibility).

"Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Andrisani v. Colvin*, 1:16-CV-00196 (MAT), 2017 WL 2274239, at *3 (W.D.N.Y. May 24, 2017) (internal quotation omitted). In this case, the ALJ adequately explained the rationale

for his credibility determination, and that rationale was reasonable in light of the record. Accordingly, remand is not warranted on this basis.

## V. CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Docket No. 8) is denied and the Commissioner's motion for judgment on the pleadings (Docket No. 13) is granted. Plaintiff's complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**

_____

HON. MICHAEL A. TELESCA
United States District Judge

Dated:  March 15, 2018
        Rochester, New York